UNITED STATES BANKRIUPTCY COURT
DISTRCT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,　　　　　　　　　　　No. 11-13861-j13

　　　　　Debtor

**MEMORANDUM OPINION**

The following matters are before the Court: a) Motion to Dismiss or Convert to Chapter 7, filed by Belleview Valley Land Co., Inc. ("BVL"), John H. Williams and Ellen B. Williams, filed October 19, 2011 (Docket No. 20); b) Confirmation of Debtor's Chapter 13 Plan (Docket No. 11); c) Debtor's Motion to Employ Assist2Sell as Real Estate Agent, filed December 15, 2011 (Docket No. 35); and d) Debtor's Motion to Employ United Country Boot Hill Realty as Real Estate Agent, filed December 15, 2011 (Docket No. 36).

The Court held a final, evidentiary hearing on these matters on January 23, 2012 in Roswell, New Mexico, and took the matters under advisement. The parties stipulated to the admission of all exhibits. The Court took judicial notice of all proofs of claim filed in the Debtor's bankruptcy case as of the date of the final hearing.[1]

At the beginning of the final hearing, the Debtor announced that he had reached an agreement with the Chapter 13 Trustee to modify his proposed Chapter 13 plan as follows:

1. The Debtor will pay 100% of all claims, plus 3% interest on unsecured claims.

2. The Debtor waives his homestead exemption on the condition that the Court confirms his Chapter 13 plan as modified.

---

[1] Following the conclusion of the final hearing, the Court made oral findings of fact and conclusions of law on the record. Those findings and conclusions are substantially the same as the findings and conclusions contained in this Memorandum Opinion. The findings of fact and conclusions of law contained in this Memorandum Opinion supersede the oral findings of fact and conclusions of law made on the record.

3. The Debtor will obtain entry of an order approving disinterested realtors to sell the condominium and horse farm properties by January 31, 2012, and will list those properties at a reasonable price as soon as possible, and, if appropriate, reset the listing price(s) every three months.

4. In October 2012, the Court will hold a status conference to assess the progress the Debtor has made under the plan and to consider further modifications to the plan if appropriate.

The Debtor also stipulated at the final hearing that he will not seek to avoid BVL's judicial lien. After considering the evidence presented at the final hearing, and being otherwise sufficiently informed, the Court will confirm the Debtor's Chapter 13 plan, conditioned on inclusion of the oral modifications to the plan set forth by the Debtor announced at the final hearing (to the extent such oral modifications are consistent with the Court's ruling) and conditioned on several additional requirements and deadlines as outlined below. If the Chapter 13 plan is confirmed as modified, the Court will deny BVL's Motion to Dismiss or Convert to Chapter 7, and approve the pending motions to employ realtors.

FINDINGS OF FACT:

The Debtor is semi-retired. Before he retired, he was a successful businessman. He owned a corporation with his two brothers, and later was the sole owner of a corporation that owned and operated supermarkets in Las Cruces, Alamogordo, Tularosa, and Portales, New Mexico. The Debtor's principal assets consist of improved real estate. The value of those assets was adversely affected by the recent recession. The Debtor has no retirement accounts. His principal income is derived from social security benefits and $601.88 of monthly income from his work as a car wash attendant.

### Litigation Between the Debtor and BVL

BVL obtained a judgment from the Otero County District Court against the Debtor in the amount of $234,944.31, plus attorneys' fees in the amount of $17,711.93, arising from an order for rescission of a contract for the sale of certain real estate (the "Horse Ranch") by the Debtor to BVL. The judgment provides for interest at the statutory rate of 8.75% per annum. Based on the judgment, BVL obtained a transcript of judgment and recorded it in both Otero County and Lincoln County, New Mexico on August 17, 2010.

BVL instituted two foreclosure proceedings, one in Otero County District Court (on or around December 16, 2010), and one in Lincoln County District Court (on or around July 26, 2011), to foreclose its lien against the Debtor's real property located in those two counties. The Debtor testified that he intends to assert a claim against BVL for waste that the Debtor claims to have occurred during the time BVL owned the Horse Ranch. BVL's two foreclosure proceedings were stayed upon the commencement of the Debtor's Chapter 13 bankruptcy case on August 29, 2011.

### The Debtor's Assets

The Debtor's assets include the Horse Ranch, and a condominium located in the Palisades Condominium Project, Phase 2, Ruidoso, New Mexico (the "Palisades Condo"). The Palisades Condo is the Debtor's residence. The Horse Ranch is a 30-acre parcel of land.

The Debtor listed a 7.1 acre parcel of land (the "7.1 acre parcel") on Schedule A, which the Debtor asserts is property of his son. The Debtor testified that he conveyed this property as a gift to his son by oral agreement in 2003. No deed was recorded evidencing the conveyance. Record title to the 7.1 acre parcel is in the name of the Debtor. The Debtor's son has improved the 7.1 acre parcel. In addition, the Debtor has spent approximately $130,000.00 to $140,000.00

improving the 7.1 acre parcel since 2008. The value of the 7.1 acre parcel stated in the Schedules is $300,000.00, although the Debtor claims there is no value in the property for the bankruptcy estate because his son owns the property.

Other assets listed in the Debtor's schedules include: 1) an interest in an oil and gas lease, which provides *de minimus* income; 2) a ½ interest, which the debtor valued at $46,695.00, in approximately 311 acres of farmland that the debtor inherited from his wife and for which the government pays him $28.00 per acre per year not to farm approximately 91 acres; 3) an interest in unclaimed funds held by the New Mexico Department of Taxation and Revenue in the approximate amount of $26,200.00; and 4) an unasserted malpractice claim of unknown value against an attorney who formerly represented the Debtor.

<u>Claims Against the Estate</u>

The deadline for non-governmental entities to file proofs of claim in the Debtor's bankruptcy case expired on January 28, 2012. *See* Fed.R.Bankr.P. 3002(c). The total amount of the claims (secured and unsecured) filed in the Debtor's bankruptcy case is $353,586.68. Of this amount, $329,553.83 are filed as secured claims. The secured claimants are:

| Claimant | Amount | Security |
| --- | --- | --- |
| Roger Yarbro (Claim #3) | $21,281.00 + interest at 1.5% per annum | Palisades Condo. The lien is a third priority lien, junior to the liens of First National Bank and BVL. |
| First National Bank (Claim # 4) | $23,459.54 + interest at 4.7% per annum | The claim is secured by the Palisades Condo, although no documents were attached to the Proof of Claim filed by First National Bank to evidence a lien or money loaned. |
| BVL (Claim #5) | $284,812.54 + interest at 8.75% per annum | Real estate that BVL values in its proof of claim "in excess of $800,000". |

### Purpose for Filing Chapter 13 and the Proposed Plan

The Debtor testified that one of the primary reasons for filing a Chapter 13 case, rather than a case under Chapter 7, is to protect from BVL and other creditors the 7.1 acre parcel that the Debtor contends he gifted to his son by oral agreement. The Debtor proposes to pay all creditors in full by 1) maximizing the realized value of his other properties (the Palisades Condo and Horse Ranch); 2) making efforts to collect unclaimed funds; 3) possibly asserting a malpractice claim; and 4) and making efforts to reduce the net claim of BVL by asserting a claim against BVL for waste.

To pay all creditors 100% and fully fund the plan, the Debtor must contribute $353,586.68, plus interest, Chapter 13 Trustee's fees and the Debtor's professional fees. The Debtor proposes a 36-month plan to be funded as follows: 1) monthly payments of $50.00; 2) contribution of net proceeds from the sale of the Palisades Condo and the Horse Ranch; 3) contribution of unclaimed funds held by the New Mexico Taxation and Revenue Department; and 4) contribution of any funds recovered on a malpractice claim. On the condition that the Plan is confirmed, the Debtor has waived his $60,000.00 homestead exemption in the Palisades Condo to maximize the amount of proceeds from the sale of the Palisades Condo to be contributed to his plan.

### Liquidation of Assets and Retention of Realtors

The Debtor previously listed the Horse Ranch for sale between October 2010 and October 2011, but took the property off the market for a period of time in order to "refresh" it. The initial listing price for the Horse Ranch was $420,000.00. The price was reduced to $350,000.00 and then to $289,000.00. The Horse Ranch currently is listed for sale at $269,000.00. The Debtor seeks to employ Merry McIntosh of United Country Boot Hill to

-5-

Case 11-13861-j13    Doc 49    Filed 02/08/12    Entered 02/08/12 11:03:31 Page 5 of 16

market, list, and sell the Horse Ranch. The listing agreement provides for a 7% commission on the sale of the Horse Ranch. Ms. McIntosh has been a realtor for several years, grew up on a horse and cattle ranch, and specializes in selling properties similar to the Horse Ranch. The 7% commission is a reduced rate from the 10% commission United Country Boot Hill Realty customarily charges. The Court finds that the 7% commission is commensurate with or slightly below the market rates for similarly experienced realtors selling similar types of property in the same area and is reasonable.

Ms. McIntosh testified that she believed the Horse Ranch initially was overpriced, but that the Horse Ranch likely would sell at its current listing price during the next six to eight months. There are other horse ranch properties for sale that are located on the same road as the Horse Ranch and in the general area where the Horse Ranch is located. Ms. McIntosh testified that the Debtor's property is at a lower price point than other nearby improved horse ranches for sale, and that, at its current listing price, the Horse Ranch is a bargain.

The Palisades Condo is the Debtor's primary residence. The Debtor purchased the Palisades Condo approximately four years ago for $140,000.00 and paid $5,000.00 to furnish the unit. The Palisades Condo currently is listed for sale at $139,000.00, including furniture. The Debtor originally listed the property for sale at $179,000.00 over one year ago. Presently, the real estate market in the area where the Palisades Condo is located is a "buyer's market." Annette Wood, Associate Broker at Assist2Sell, testified about the pricing and marketing of the Palisades Condo. She has been marketing the property since approximately July 28, 2011. In Ms. Wood's opinion, the Palisades Condo likely will sell during the upcoming "selling season" from May through September, 2012 at or close to the listing price. The Application to Employ

-6-

Case 11-13861-j13    Doc 49    Filed 02/08/12    Entered 02/08/12 11:03:31 Page 6 of 16

Assist2Sell would renew the initial listing agreement and provides for a 4.5% commission for a successful sale of the Palisades Condo. The Court finds that the commission is reasonable.

Based on the evidence presented at the final hearing, including the testimony of the two realtors, the Court finds that the Debtor will likely be able to sell the Palisades Condo or the Horse Ranch property by the end of 2012 at, or not significantly less than, the current list prices for those properties. It is likely that the Debtor will be able to sell both properties by the end of 2013 for such prices.

The unclaimed funds relate to the Debtor's former grocery business. The Debtor and his son testified that the New Mexico Taxation and Revenue Department is holding funds that were owned by the Debtor's former corporations, that this asset was discovered through internet research, and that the Debtor's children have been working to recover this asset. The Debtor believes this asset is approximately $26,200.00. A portion of the unclaimed funds belongs to the Debtor and a portion belongs to the Debtor's two brothers. The status of the efforts being made to recover the unclaimed funds is such that, at this time, the prospect of recovery is too speculative to be considered a reliable source of funds for a Chapter 13 plan.

The Debtor's prospect of recovery from the malpractice claim against Debtor's former counsel who represented him in lawsuits between the Debtor and BVL, and from a claim against BVL for waste to the Horse Ranch, are also currently too speculative to be considered reliable sources of funds for a Chapter 13 plan. The Debtor has not yet retained counsel to represent him in a malpractice claim, nor has he yet initiated an action against BVL. Further, no testimony was given regarding the prospects of recovery for either claim.

## BVL'S OBJECTIONS AND MOTION TO DISMISS OR CONVERT

BVL objects to confirmation of the Chapter 13 plan and retention of the two realtors, and moves to dismiss or convert the Chapter 13 case, on the following grounds:

1. The Debtor's Chapter 13 plan fails to satisfy the best interests of creditors requirement under 11 U.S.C. § 1325(a)(4).

2. The Debtor's Chapter 13 plan is not feasible.

3. A Chapter 13 plan cannot be funded almost entirely by the sale of real property.

4. The Debtor's plan as proposed and as modified at the final hearing contains no time limits for the Debtor to make payment and contains no default provisions.

5. The Debtor has failed to satisfy the "good faith" requirement under 11 U.S.C. § 1325(a)(3).

6. The Debtor improperly seeks to avoid BVL's judgment lien.

7. The proposed commission to Boot Country Realtors is too high.

8. Because confirmation of the plan should be denied, the Court likewise should deny the Debtor's request to retain the realtors and should dismiss or convert the chapter 13 case.

The objection that the Debtor improperly seeks to avoid BVL's judgment lien was rendered moot by the oral plan modification made at the outset of the confirmation hearing. The Court has found that the proposed realtor commission is reasonable. The Court will address BVL's other objections below.

## THE COURTS RULING

The Court will confirm the Debtor's Chapter 13 plan, conditioned on the Debtor filing a plan modification on or before February 15, 2012 that includes the additional modifications to the plan as outlined below, as well as the plan modifications announced by the Debtor at the

-8-

beginning of the hearing (to the extent the Debtor's oral plan modifications are consistent with this Memorandum Opinion).[2] The conditions to confirmation are:

1. The Debtor must sell the Horse Ranch or the Palisades Condo on or before December 31, 2012. The sale must be closed and funded by that date. If the Debtor has not sold either the Horse Ranch or the Palisades Condo by December 31, 2012, the stay will be terminated to permit BVL to exercise its state law remedies against the collateral.

2. Until BVL is paid in full, BVL shall be paid all sale proceeds from the sale of the Palisades Condo and the Horse Ranch, less (i) costs of sale, (ii) the Chapter 13 Trustee's commission resulting from the sales, and (iii) the amount of any liens prior to the lien of BVL. Costs of sale will include the realtors' commissions.

3. The Debtor must pay BVL at least $100,000.00 by December 31, 2012. If the Debtor has not paid BVL at least $100,000.00 by December 31, 2012, the stay will be terminated to permit BVL to exercise its state law remedies against the collateral.

4. The Debtor must sell both the Horse Ranch **and** the Palisades Condo no later than December 31, 2013. If the Debtor has not sold both the Horse Ranch **and** the Palisades Condo by December 31, 2013, the stay will be terminated to permit BVL to exercise its state law remedies against the collateral.

---

[2] Rather than deny confirmation and give the Debtor an opportunity to propose another plan, the Court has specified the conditions under which it will confirm the Debtor's proposed Chapter 13 plan for several reasons. The plan modification imposed by the Court as a condition to confirmation gives more favorable treatment to the claims of all creditors than the plan the Debtor proposed, and results in no additional potential objections to plan confirmation or additional evidence that could be presented in opposition to plan confirmation. As a result, no further notice or opportunity to object or for a hearing is necessary prior to confirmation of a plan as modified in a manner consistent with this Memorandum Opinion. In these circumstances and under the facts of this case, the Court has determined that the delay and additional legal expense that would result if the Court had denied confirmation instead of conditionally confirming the plan is not in the best interests of the estate or creditors.

5. BVL and all other creditors holding allowed claims must be paid in full on or before December 31, 2013, or the Debtor must list and sell the 7.1 acre parcel and use the net sale proceeds to pay creditors pursuant to the plan.

6. If the Debtor has not paid BVL and all other creditors holding allowed claims in full by December 31, 2013 and has not listed the 7.1 acre parcel for sale on or before January 15, 2014, the stay will be terminated to permit BVL to exercise its state law remedies against the collateral.

7. If the 7.1 acre parcel is timely listed for sale and the Debtor satisfies the other requirements to avoid termination of the stay in favor BVL under the terms of the plan, BVL and all other creditors holding allowed claims must be paid in full by December 31, 2014. If BVL is not paid in full by December 31, 2014, the stay will be terminated to permit BVL to exercise its state law remedies against the collateral.

8. On or before February 15, 2012, the Debtor must obtain his son's written agreement to list and sell the 7.1 acre parcel and to use the net sale proceeds to pay creditors pursuant to the plan in the event BVL and other creditors have not been paid in full by December 31, 2013.

9. The statute of limitations on fraudulent transfer and avoidance claims that might apply to 1) the Debtor's transfer or alleged transfer of the 7.1 acre parcel to his son, Brian Van Winkle; or 2) the expenditure of funds to improve the parcel, shall be tolled during the pendency of the Debtor's bankruptcy case as a case under chapter 13. On or before February 15, 2012, the Debtor must obtain his son's written consent to such tolling of the statute of limitations.

-10-

DISCUSSION

### Best Interests of Creditors

Section 1325(a)(4)[3] of the Bankruptcy Code imposes what is known as the "best interest of creditors test." This requirement "ensures that a Chapter 13 plan provides unsecured creditors with at least as much return as they would receive in a Chapter 7 liquidation." *In re Keenan,* 431 B.R. 308, *3 (10th Cir. BAP 2009)(unpublished).[4] A debtor can satisfy the best interest of creditors test and "buy out' non-exempt, prepetition assets by paying their value to unsecured creditors with increased payments . . . to the Trustee over the life of the plan." *Hutchinson,* 354 B.R. at 531.

The Debtor has agreed to pay 100% of all creditors' claims, including interest on unsecured claims at the rate of 3% per annum. The Trustee has consented to this rate of interest. Payment of 100% of all claims, plus interest on unsecured claims at an appropriate interest, rate satisfies the best interest of creditors test.[5]

---

[3] Section 1325(a)(4) provides, in relevant part:
   . . . the court shall confirm a plan if –
      (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date[.]
   11 U.S.C. § 1325(a)(4).

[4] *See also In re Hutchinson,* 354 B.R. 523, 531 (Bankr.D.Kan. 2006)(stating that the best interest of creditors "test, articulated under § 1325(a)(4), requires that the Chapter 13 plan provide distributions to each allowed unsecured creditor that are not less than what the unsecured creditor would have received if the debtor's estate were liquidated under a Chapter 7 proceeding.").

[5] *See In re Cook,* 322 B.R. 336, 339 (Bankr.N.D.Ohio 2005)(holding that in order to satisfy the best interest of creditors test, the plan had to provide for payment of interest on allowed unsecured claims). *Cf. In re Ross,* 375 B.R. 437, 444 (Bankr.N.D.Ill. 2007), *amended on reconsideration by* 377 B.R. 599 (Bankr.N.D.Ill. 2007)(acknowledging that in a "case where there is equity in property the Debtor proposes to keep . . . the best interest of creditors test of §1325(a)(4) . . . is satisfied by a plan proposing to pay 100% to unsecured allowed claimants over time, plus interest to compensate for the delay in payment[, ]" but overruling the trustee's objection to confirmation on grounds that the debtor's plan failed to pay interest, finding that payment of interest on unsecured claims is **not** required in order to satisfy the requirements of 11 U.S.C. § 1325(b)(1)(A). In its amended opinion, the Court confirmed the debtor's proposed plan because it complied with the requirements of § 1325(b)(1)(A)).

### Feasibility

Based on the modifications outlined above, it is *possible* that the Debtor will be able to achieve payment in full to all creditors through a sale of the Horse Property, a sale of the Palisades Condo, contribution of any recovery from unclaimed funds held by the New Mexico Department of Taxation and Revenue and other sources, and by reducing the allowed amount of creditors' claims. If not, the plan, as modified, requires the Debtor to sell the 7.1 acre parcel. In its proof of claim, BVL valued the collateral securing BVL's claim at $800,000.00. Eight hundred thousand dollars is well over the total amount of the claims filed in this bankruptcy. Based on the value of the properties to be sold under the plan, and the time reasonably required to sell the properties to realize that value, the Court finds that the Debtor's plan is feasible as modified by the conditions imposed by the Court in this ruling.

### Good Faith

A debtor's good faith in proposing a chapter 13 plan must be determined on a case by case basis, considering the totality of the surrounding facts and circumstances. *In re Robinson,* 987 F.2d 665, 668 (10th Cir. 1993)(stating that "[a] determination of good faith must be made on a case by case basis, looking at the totality of the circumstances.")(citing *Pioneer Bank v. Rasmussen (In re Rasmussen),* 888 F.2d 703, 704 (10th Cir. 1989)). In evaluating a debtor's good faith, Courts are guided by the eleven factors established in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983), in addition to any other relevant circumstances. *Id.* Those factors include:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special

-12-

circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

*Flygare,* 709 F.2d at 1347-48 (quoting *In re Estus,* 695 F.2d 311, 317 (8th Cir. 1982)). The weight to be given each of these factors will vary based on the relevant facts and circumstances of each case. *Id.* at 1348.

BVL asserts that the Debtor's proposal to fund his Chapter 13 plan almost entirely from sales of real property is contrary to the purpose of Chapter 13, demonstrates a lack of good faith, and is a sufficient ground for dismissal or conversion. Under the facts and circumstances of this case, the Court disagrees.

Some courts have held that a Chapter 13 debtor may not fund a plan solely from the sale of property, reasoning that Chapter 13 is designed to provide relief to individuals with regular income. *See, e.g., In re Lindsey,* 183 B.R. 624, 626-627 (Bankr.D.Idaho 1995)(citing *In re Gavia,* 24 B.R. 573, 575 (9th Cir. BAP 1982)). However, even the *Lindsey* court acknowledged that "[t]he Code does not explicitly prohibit funding of Chapter 13 plans through the liquidation of assets" and that "[p]artially funding a Chapter 13 plan through the sale of property is permitted by Code section 1322(b)(8)." *Lindsey,* 183 B.R. at 626 (citations omitted). Section 1322(b)(8) provides that a Chapter 13 plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8). Provided a debtor otherwise meets the eligibility requirements for Chapter 13 relief, "liquidating real property, including a primary residence, to fund a plan, is permitted . . . even if the sale were

-13-

to occur post-confirmation." *In re Turner,* 207 B.R. 373, 376 (2nd Cir. BAP 1997)(citing *Lindsey,* 183 B.R. at 626 and *In re Erickson,* 176 B.R. 753, 757 (Bankr.E.D.Pa. 1995)).[6]

Here, the Debtor disclosed in his schedules an oral gift of the 7.1 acre parcel to his son, assigned a $300,000.00 value to that property, and was candid about his goal in this chapter 13 case to protect that property from creditors so that that his son can retain that property. The Debtor proposes to make minimal monthly payments of $50.00 per month under the plan. The Debtor, being semi-retired and working as an assistant at a car wash, does not have a reasonable prospect of future increases in income. The Debtor has agreed to pay 100% of all claims, plus interest to unsecured creditors. He has agreed to waive his $60,000.00 homestead exemption if the plan is confirmed. There is no credible evidence that the Debtor has attempted to mislead the Court.

In addition, the conditions to confirmation set forth in this Memorandum Opinion impose reasonable and appropriate time constraints on the sale of properties. The Debtor and his son must agree to sell the 7.1 acre parcel for the benefit of creditors holding allowed claims in this case in the event creditors have not been paid in full by December 31, 2013. The Debtor intends to assert a claim for waste in an attempt to reduce the amount of BVL's net claim against the estate, and, with the assistance of his children, is making diligent efforts to locate and collect unclaimed funds from the New Mexico Department of Taxation and Revenue. Based on the Debtor's testimony, the Court finds that the Debtor is sincere in seeking Chapter 13 relief. Having considered the relevant circumstances and the *Flygare* factors, the Court finds that the Debtor has satisfied the good faith requirements for confirmation of his Chapter 13 plan.

---

[6] *See also, In re Snyder,* 420 B.R. 794, 802 (Bankr.D.Mont. 2009)(acknowledging that a debtor may partially fund a chapter 13 plan through sales of property consistent with § 1322(b)(8), and finding that a plan that provided for sale of debtor's residence to fund plan, including a "drop dead" date satisfied both the feasibility and good faith requirements of § 1325, even though debtor's plan proposed monthly payments of only $100 per month and would pay nothing on secured claims until the sale of the residence).

-14-

CONCLUSION

Based on the foregoing, the Court will confirm the Chapter 13 plan, as orally modified by the Debtor at the beginning of the confirmation hearing, provided that, on or before February 15, 2012: (i) the Debtor files a plan modification that modifies the plan further as set forth in this Memorandum Opinion and that contains his oral plan modifications announced on the record at the final hearing to the extent consistent with the terms of this Memorandum Opinion; and (ii) the Debtor obtains the written consent and written agreement of his son as set forth in this Memorandum Opinion and files such written consent and written agreement of record in this case. If the Debtor does not satisfy these conditions by February 15, 2012, confirmation of the Debtor's plan will be denied.

If the Debtor's plan, as modified, is confirmed, BVL's Motion to Dismiss or Convert will be denied. If the Debtor's plan, as modified, is not confirmed, the Court will make a further ruling on Motion to Dismiss or Convert. If the Debtor's plan, as modified, is confirmed, the Applications to Employ will be approved and BVL's objection to the applications to employ will be overruled. If the Debtor's plan, as modified, is not confirmed, the Court will make a further ruling on the motions to retain the realtors. The Debtor must obtain Court approval before consummating any sales of property of the estate. The Court will enter orders consistent with the terms of this Memorandum Opinion upon expiration of the February 15, 2012 deadline.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date Entered on Docket: February 8, 2012

COPY TO:

R Trey Arvizu, III
Attorney for the Debtor
PO Box 1479
Las Cruces, NM 88004-1479
trey@arvizulaw.com

W. T. Martin Jr.
Martin Dugan & Martin
Attorneys for Belleview Valley Land Co., Inc.,
John H. Williams and Ellen B. Williams
PO Box 2168
Carlsbad, NM 88220
575-887-3528
575-887-2136 (fax)
martinlaw@zianet.com

Christopher M Gatton
Law Office of George Dave Giddens, PC
Attorneys for Belleview Valley Land Co., Inc.,
John H. Williams and Ellen B. Williams
10400 Academy Rd., #350
Albuquerque, NM 87111
chris@giddenslaw.com

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111
chap13@ch13nm.com